IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VICTOR HOLM,

                                                    OPINION AND ORDER

          Plaintiff,

                                                    17-cv-72-bbc

      v.

STEVE HELGERSON, DR. DALIA SULIENE,
DR. FERN SPRINGS, DR. KARL HOFFMANN,
DR. SALAM SYED, TRISH ANDERSON and
JAMIE GHODE,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Victor Holm is proceeding on Eighth Amendment claims that health care staff at the Columbia Correctional Institution failed to provide him appropriate treatment for a herniated disc and three bulging discs in his spine in 2011 and between 2015 and March 2017. (I have amended the caption of the complaint to reflect defendants' full names and the correct spelling of their names). Now before the court is defendants' motion for summary judgment. Dkt. #30. For the reasons explained below, I am granting the motion and closing this case.

      As a preliminary matter, I note that plaintiff has responded to some of defendants' proposed findings of fact with an argument or a statement of his own conclusory opinion and not citing any admissible evidence in support of his contention. This practice violates the court's summary judgment procedures, which direct parties that "[e]ach fact proposed in disputing a moving party's proposed factual statement . . . must be supported by admissible evidence. The court will not search the record for evidence. . . . or consider any

1

factual propositions made in response to the moving party's proposed facts that are not supported properly and sufficiently by admissible evidence."  Pretr. Conf. Ord., dkt. #15, at 20.  Therefore, I have considered plaintiff's responses to defendants' proposed findings of fact only to the extent that they are clearly and obviously supported by citations to admissible evidence.

With this consideration in mind, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

A.  <u>The Parties</u>

At all times relevant to this case, plaintiff Victor Holm was incarcerated at the Columbia Correctional Institution.  Defendants have all worked at Columbia at some time.

During all times relevant to this lawsuit, defendant Jamie Gohde was the health services unit manager and defendants Steven Helgerson and Trisha Anderson were nurses. Helgerson and Anderson provided direct medical treatment to plaintiff, but Gohde's duties do not usually involve providing direct care to patients.  The health services unit manager and the nurse clinicians do not have authority  to prescribe medications.

Defendant Dr. Dalia Suliene was a physician at the prison between January 3, 2006 and April 5, 2013.  Dr. Salam Syed is currently employed as a physician at Columbia and has worked at various institutions since July 2014.  Defendant Dr. Karl Hoffmann was a physician at Columbia between February 12, 2014 and March or April 2015.  Defendant

Fern Springs was employed as a half-time physician at the Chippewa Valley Correctional Treatment Facility from August 2005 until July 2015 but covered vacancies at other institutions as needed. Between February 2016 and November 2017, Springs was employed as a limited term employee with the Department of Corrections. The physician defendants are not surgeons and do not have the authority to order surgery in the absence of a recommendation from a surgeon indicating that surgery is necessary.

## B. Health Service Requests

Inmates at Columbia must submit a health service request to the health services unit if they require non-emergency medical attention. Health services unit staff try to triage all requests received within 24 hours of receipt, that is, they review requests from prisoners and evaluate the urgency of each. If they believe that the request is urgent or represents an emergency, arrangements will be made for a same day appointment, if possible, for evaluation by a health care provider. Although the health services unit manager's duties include responding to health service requests, the majority of these requests are first reviewed by nursing staff.

It is the unit's general practice not to refer inmates to an advanced care provider until nursing staff have assessed or examined the inmate. Nursing staff do not have control over the schedules of advanced care providers, who may have to change their schedules or respond to emergency situations.

## C. 2011 Treatment by Helgerson, Suliene and Springs

On May 23, 2011, plaintiff saw defendant Helgerson for back, chest and arm pain that started after plaintiff had completed 150 push-ups. Helgerson consulted Dr. Suliene, who prescribed Vicodin, an arm sling and an extra pillow. Suliene ordered a neck and thoracic spine x-ray for the following day and gave plaintiff a one-week course of Flexeril for muscle spasms. She also placed plaintiff on a two-week recreation restriction and planned to see him for a follow up in one week. Later that day, plaintiff saw Nurse Joe Reda, who gave plaintiff 50 milligram ibuprofen tablets during an emergency sick call visit.

Plaintiff's May 24, 2011 x-rays showed some bone spurring and disc narrowing in his cervical spine but no fracture. The radiologist recommended a magnetic resonance imaging study.

Plaintiff submitted health service requests dated May 25 and 26, 2011, stating that the ibuprofen and muscle relaxers were not helping his shoulder and arm pain and that he had run out of his 600 milligram tablets of ibuprofen. He asked to be seen immediately for unrelenting pain that was preventing him from sleeping, walking and putting his shoes on. Helgerson received the forms on May 28, 2011 and saw plaintiff at sick call the same day. Plaintiff requested stronger pain medication. Helgerson observed plaintiff get up on the exam table easily and remove his shirt without difficulty. Plaintiff's hand grasp was strong, he could move his arm all the way out and back with minimal issues and he had no edema, redness or limits in his range of motion. (Although plaintiff says that he disputes Helegerson's account, he does not say that he could not do any of these things during the

examination.) Helgerson noted in plaintiff's chart that plaintiff was taking five ibuprofen tablets at a time, which is far more than the normal amount. Helgerson asked the on-call physician, Dr. Springs, whether plaintiff's medication should be changed because plaintiff was asking for stronger pain medication. Springs did not order different medication because plaintiff was already prescribed 600 milligrams of ibuprofen four times a day, his x-rays did not show serious abnormalities and his physical examination showed a normal range of motion. Plaintiff was scheduled to see a physician within three days.

Suspecting that plaintiff was abusing his medication, Helgerson asked plaintiff's housing unit to make plaintiff's ibuprofen "controlled" so that plaintiff would no longer have the drug in his possession and the medication would be dispensed at certain times of the day. Beginning May 29, 2011, plaintiff was offered 600 milligrams of ibuprofen four times a day as prescribed. (Plaintiff says that he had not been taking too much ibuprofen because he was taking five of the 50 milligram tablets he received on May 23, 2011, which was less than his total prescribed amount. Plaintiff says in his affidavit that he tried to explain this to Helgerson but Helgerson did not listen to him.) According to defendant Dr. Springs, making a medication controlled prevents inmates from abusing or overdosing on a medication because they do not have them in their possession to take as often as they please. If health services unit staff have reason to believe that an inmate could be abusing medication, they have the authority to make that medication controlled.

On May 31, 2011, plaintiff saw defendant Dr. Suliene, who requested approval from the institution's medical committee for a magnetic resonance imaging study and ordered

physical therapy for plaintiff. On June 1, 2011, she renewed plaintiff's ibuprofen prescription and also prescribed gabapentin for additional pain management. According to Suliene, she prescribed gabapentin because it enhances the effect of pain medications, which she believed might reduce plaintiff's pain.

Plaintiff submitted two health service request forms dated June 7, 2011, and the health services unit received them on June 8. In one form, plaintiff complained that he had not been treated or diagnosed by Dr. Suliene. Helgerson responded on June 8, 2011 that various medical professionals had seen plaintiff numerous times since May 23, 2011. Helgerson also scheduled a nurse appointment for plaintiff for the next day. Helgerson forwarded the health service request for a doctor's review. Plaintiff directed his second health service request to Dr. Suliene, complaining that she had not prescribed him long-term pain medication and that his pain was not improving. Helgerson forwarded this request to a doctor for review, and Dr. Suliene responded on June 8, telling plaintiff that he should take the gabapentin as prescribed and that he had an imaging study scheduled.

Plaintiff's magnetic resonance imaging study was approved on June 7, 2011 and performed on June 16. It showed arthritic cervical spine changes (herniated and bulging discs).

On June 20, 2011, plaintiff submitted a health service request for "emergency medical services" because he had severe pain that was not responding to medication. On June 21, 2011, plaintiff saw Dr. Correll, another institution provider. (Defendants say that Correll explained to plaintiff that there was no surgical remedy for his condition. Plaintiff says that

the first specialist whom he saw at the University of Wisconsin Hospital and Clinics told him about a less invasive "laser spine surgery." Although plaintiff at one point identifies Dr. Correll as the specialist, that does not seem to be the case.) Plaintiff also saw Dr. Kenneth Adler (not a defendant) on June 22, 2011 for a follow-up for his neck and shoulder pain. Dr. Adler increased plaintiff's gabapentin dosage and scheduled another follow-up appointment.

On June 24, 2011, plaintiff's muscle relaxer was discontinued pursuant to a health services unit policy that limited an inmate's use of the medication to three weeks. The same day, plaintiff submitted a health service request for emergency medical services. Helgerson responded that he had a sick call scheduled.

Plaintiff underwent trigger point steroid injections on July 1, 2011, but he told Helgerson on July 2 that they were not helpful. Helgerson told plaintiff to raise his concerns at his upcoming appointment with Dr. Suliene.

On July 7, 2011, Dr. Suliene saw plaintiff and noted that he was uncomfortable and in pain. She referred plaintiff to the University of Wisconsin Orthopedics and Spine Clinic for further evaluation, requested a nerve study and placed plaintiff on a light activity medical restriction for his prison work.

An August 18, 2011 nerve study confirmed chronic nerve damage in plaintiff's neck resulting from degenerative changes. Plaintiff was seen at the spine clinic on November 11, 2011 and March 9, 2012, but surgery was not recommended on either visit. (Records from the 2012 appointment show that plaintiff reported that his pain was almost gone. Plaintiff

denies saying this and says that he has been in severe pain since May 2011.)

The parties do not discuss any further treatment that plaintiff may have received in 2012 and 2013.

### D. 2014 Treatment by Hoffmann

Dr. Hoffmann first saw plaintiff on July 14, 2014. Plaintiff complained about right shoulder and neck pain from lifting a heavy box in 2013. At the time of the appointment, plaintiff was participating in physical therapy, but he reported that doing so caused radiating pain into his neck. Hoffmann reviewed the 2011 imaging studies and performed a physical examination. He concluded that plaintiff's symptoms might be the result of a rotator cuff injury, so he referred plaintiff for an orthopedic consultation with Dr. Ellen O'Brien. On O'Brien's recommendation, Hoffmann ordered x-rays and requested another imaging study for plaintiff on August 20, 2014.

Plaintiff's August 26, 2014 x-rays were normal. A November 18, 2014 imaging study showed a partial tear of the labrum, which Hoffman explains shows rotator cuff tendinosis, a common cause of shoulder pain caused by aging or other factors. On November 20, 2014, Dr. O'Brien referred plaintiff to the University of Wisconsin Orthopedics department for an evaluation and "surgical consideration."

### E. 2015 Treatment by Hoffmann, Syed and Anderson

On March 16, 2015, an outside orthopedic surgeon gave plaintiff a diagnosis of right

shoulder rotator cuff tendinitis and right shoulder superior labrum anterior and posterior lesion tearing. The surgeon did not recommend surgery but continued plaintiff on gabapentin and ibuprofen and recommended physical therapy and a steroid injection. On March 17, prison staff ordered physical therapy and a steroid injection for plaintiff. Plaintiff refused physical therapy in March 2015 because it was too painful.

Plaintiff saw Dr. Syed on April 3, 2015, complaining of shoulder pain and folliculitis and reporting that he was supposed to have surgery. Syed reviewed the orthopedic evaluation from March and explained to plaintiff that the orthopedic surgeon had recommended physical therapy and a steroid injection but not surgery. On April 20, 2015, plaintiff received a steroid injection at the University of Wisconsin Hospital and Clinics and was prescribed Tramadol and Alleve as needed with a follow-up appointment in six weeks. The plan was for plaintiff to complete four weeks of physical therapy, but he did not do so. (Defendants say plaintiff refused to try the therapy. Plaintiff says that he was in too much pain to participate in it.)

On June 9, 2015, plaintiff saw defendant Anderson for neck and shoulder pain. During her examination, Anderson noted a decrease in the rotation of plaintiff's neck but full function in his upper limbs. She reviewed plaintiff's medication profile and consulted with Dr. Syed about plaintiff's current medication. Syed ordered daily acetaminophen for six months. Anderson also gave plaintiff ice and education on exercises and stretching, and scheduled him for follow-up with an advanced care provider within two weeks.

On June 10, 2015, plaintiff submitted a health service request asking for more pain

medication. On June, 12, 2015, Anderson informed him that a follow-up appointment with a doctor was already scheduled.

On July 6, 2015, plaintiff saw Dr. Syed for neck and shoulder pain and reported feeling somewhat better after his last steroid injection. Syed ordered Tramadol (a narcotic pain medication) for two weeks and then gabapentin for six months for plaintiff's pain. According to Syed, gabapentin is not a narcotic but still has potential for addiction and is used for treating chronic nerve pain. Plaintiff did not see Syed again until 2016.

### E. 2016 Treatment by Anderson, Syed and Springs

On January 13, 2016, plaintiff submitted a health service request in which he complained that he had been trying to see a doctor for his neck, shoulder and infected hair follicles. The same day, defendant Anderson responded that a follow-up appointment was scheduled.

At his January 19, 2016 appointment with Dr. Syed for neck and shoulder pain, plaintiff reported that his gabapentin prescription had run out, but he did not report new or increased symptoms relating to his shoulder and neck at this appointment. Syed ordered a higher dose of acetaminophen and naproxen as alternative pain medication to gabapentin because long-term prescriptions for gabapentin in prison settings have been known to be abused.

Plaintiff submitted multiple health service requests on February 16, 2016, complaining about arm and shoulder pain and his belief that nothing was being done to treat

him. On February 17, Anderson responded by telling him that he had seen Dr. Syed on January 19, 2016 and had not brought up any of these concerns at that appointment. Anderson scheduled him for a follow-up appointment with a doctor on March 14, 2016, and reminded him that he needed to raise his concerns regarding his pain. Syed saw plaintiff for a few other appointments in 2016 and 2017 and referred him for follow- up at the University of Wisconsin Hospital and Clinics.

Dr. Springs's only in-person encounter with plaintiff was on September 22, 2016, when she examined him for injuries he reportedly suffered to his neck, upper back and right shoulder from doing pushups and lifting a box. She reviewed plaintiff's 2014 imaging study and noted that plaintiff had been referred to the University of Wisconsin spine clinic. However, because plaintiff's file did not contain the necessary paperwork, Springs completed it to make sure that the appointment would occur. She also submitted a request for plaintiff to get another steroid injection for temporary relief for his shoulder pain. According to Springs, conservative treatment is typically recommended for the injuries that plaintiff presented on September 22, 2016. In her opinion, healing times vary, depending on many factors, including the severity of the original injury and the patient's activity level.

Although plaintiff told Dr. Springs that gabapentin had helped his pain, the Bureau of Health Services had changed the rules for prescribing gabapentin because the medication was being abused. In order to request authorization to order gabapentin, a prison physician had to document the failure of a tricycle antidepressant such as nortriptyline and duloxetine. Springs prescribed a trial of duloxetine because plaitiff had told her that nortriptyline had

not been helpful. According to Springs, duloxetine may help relieve nerve pain in people with chronic back pain. She also referred plaintiff for more physical therapy sessions.

### F. March 2017 Complaint of Pain to Gohde

On March 29, 2017, plaintiff submitted a health service request to Gohde in which he complained that he had not been receiving medical care for a herniated disc and bulging discs in his neck. He also reported that his pain medication had run out and that he had been asking to see a doctor since December. Gohde received the request on March 31, 2017 and responded the same day. She scheduled plaintiff to see nursing staff during sick call and noted that plaintiff had a doctor's appointment scheduled for the week of April 10, 2017. (Although plaintiff says that he did not have a doctor 's appointment the week of April 10, he does not present any evidence showing that Gohde knew that he did not have an appointment when she responded to his health service request.)

On April 3, 2017, plaintiff saw a nurse who noted that his gabapentin had not yet arrived from the central pharmacy, told correctional staff to issue plaintiff the neck brace ordered by physical therapy and forwarded his chart to a physician for renewal of his duloxetine and special medical restrictions. The next day, on April 4, plaintiff sent Ghode a health service request, stating that he had received a prescription for 600 milligrams of gabapentin, four times a day from the University of Wisconsin Hospital and Clinics on March 20, 2017, but his medication had been placed on controlled status and stopped. On April 17, 2017, plaintiff saw a nurse and asked for gabapentin, but his chart showed that he

had been stealing medications from the cart and saving them for later. The nurse ordered gabapentin for plaintiff on the condition that it be crushed.

OPINION

A. Legal Standards

To prevail on a claim under the Eighth Amendment, a prisoner must show that the defendant was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). Defendants do not contend that plaintiff's chronic arthritic changes, nerve impingement, disc problems and complaints of pain fail to meet this standard, and a reasonable jury could conclude from the record that plaintiff had a serious medical need.

"Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). In applying the deliberate indifference

standard, "'[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (quoting Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008)). "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible did not actually base the decision on such a judgment." Id.

The Court of Appeals for the Seventh Circuit has made clear that at summary judgment, "[c]onclusory allegations that have no factual support are insufficient to create a genuine issue of material fact." Powers v. Dole, 782 F.2d 689, 695 (7th Cir. 1986). Therefore, to prevail on his claims, plaintiff must present specific evidence showing that defendants did not have adequate medical justification for their treatment decisions. It is not enough for plaintiff to show that he disagrees with defendants' conclusions about the appropriate treatment, Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006), that other medical providers reached a different conclusion about what treatment to provide plaintiff, Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014), or even that defendants could have provided better treatment. Lee v. Young, 533 F.3d 505, 511-12 (7th Cir. 2008). Even a showing of negligence or medical malpractice is not enough to prevail on a claim under the Eighth Amendment. Norfleet, 439 F.3d at 396. Rather, plaintiff must show that any medical judgment by defendants was "so significant a departure from accepted professional

standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." Pyles, 771 F.3d at 409. In addition, plaintiff must show how each of the seven defendants was personally involved in depriving plaintiff necessary treatment. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012).

B. Plaintiff's Claims

Plaintiff was allowed to proceed on the following twelve claims:

(1)     On May 25 and 26, 2011, Helgerson refused to treat plaintiff's pain.

(2)     On May 28, 2011, Helgerson confiscated plaintiff's ibuprofen and refused to give him any between 8:30 p.m. and 6:00 a.m., so that plaintiff was unable to sleep.

(3)     On May 28, 2011, Dr. Springs refused to prescribe additional pain medication.

(4)     On May 31, 2011, Dr. Suliene refused to prescribe pain medication.

(5)     On June 7, 2011, Helgerson intercepted a health services request that plaintiff had sent to Suliene and refused to refer plaintiff to the doctor.

(6)     On June 24, 2011, Dr. Hoffmann discontinued plaintiff's muscle relaxer.

(7)     Drs. Suliene and Hoffmann refused to recommend surgery for plaintiff in 2011.

(8)     In 2015, when plaintiff complained to Drs. Hoffmann and Syed again about neck and shoulder pain, these defendants refused to recommend surgery or provide appropriate pain

treatment.

(9)      From 2015 to the present, Anderson has refused to schedule appointments for plaintiff to see a doctor about his pain.

(10) Dr. Springs refused to recommend surgery in 2016.

(11) On November 30, 2016, Dr. Springs refused to prescribe pain medication.

(12) Ghode refused to refer plaintiff to a doctor for his pain in March 2017.

Although plaintiff discusses other instances in which he was allegedly denied adequate medical care for his shoulder, neck and back, I have not considered those arguments because they are not the subject of this lawsuit or related to the claims on which plaintiff was allowed to proceed.

Plaintiff's claims can be grouped into categories relating to the denial of pain medication, the denial of doctor appointments and the denial of surgery. I address each category separately below.

## C.  Denial of Pain Medication

Plaintiff alleges that in May and June of 2011, in 2015 and on November 30, 2016, five defendants either refused to prescribe him pain medication or denied him access to his prescription pain medication or ibuprofen. As I explained in the order screening plaintiff's complaint, medical staff have considerable discretion under the Eighth Amendment in choosing appropriate treatment, particularly with respect to pain medication, which requires

medical staff to consider not just a patient's complaints of pain, but security and addiction concerns as well.  Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("Using [pain killers] entails risks that doctors must consider in light of the benefits. . . . Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").  In this case, plaintiff has failed to adduce sufficient evidence to show that defendants' conduct was "blatantly inappropriate" and that defendants knew about obvious, reasonable alternatives, but refused to consider them.  Id.

1.  Defendants Helgerson and Springs: May 25 to 28, 2011

Plaintiff alleges that Helgerson failed to respond to his complaints of pain on May 25 and 26, 2011 and took away his pain medication on May 28, 2011.  As an initial matter, it is undisputed that Helgerson is a nurse who does not have the authority to prescribe pain medication.  Plaintiff submitted health service requests dated May 25 and 26, 2011, stating that the ibuprofen and muscle relaxers were not helping his shoulder and arm pain and that he had run out of his 600 milligram tablets of ibuprofen.  Although plaintiff did not receive a response until May 28, 2011, he fails to present any evidence that Helgerson or any of the named defendants saw the health service request forms before May 28 or were in any way responsible for a one to two-day delay in treatment.  The undisputed facts show that Helgerson signed the May 25 health service request form on May 28, 2011 and examined plaintiff the same day.

During his appointment with Helgerson on May 28, 2011, plaintiff asked for stronger pain medication than the five tablets of ibuprofen he was taking. However, Helgerson noted that the five tablets amounted to a higher than usual dose and that plaintiff got up on the exam table easily, removed his shirt without difficulty, had a strong hand grasp, could move his arm with minimal issues and had no edema, redness or limits in his range of motion. Although plaintiff says that this shows that Helgerson thought plaintiff was faking his symptoms, plaintiff does not say that he was unable to do any of these things or otherwise dispute the results of the physical examination with any accounts of his own.

Helgerson took action to address plaintiff's complaints of pain by asking Dr. Springs if plaintiff's medication should be changed because plaintiff was asking for stronger pain medication and by scheduling plaintiff to see a physician within three days. Springs did not order a different medication because plaintiff was already prescribed 600 milligrams of ibuprofen four times a day, his x-rays were normal and his physical examination showed a normal range of motion.

Plaintiff accuses Helgerson of giving Dr. Springs inaccurate information about the medication he was taking and inappropriately confiscating his ibuprofen because Helgerson thought plaintiff was faking his symptoms and abusing his medication. However, there is no evidence that Helgerson acted unreasonably under the circumstances. Plaintiff admits in his brief, dkt. #45 at 4, that Helgerson thought that plaintiff was referring to the 600 milligram tablets that he had been prescribed and not the 50 milligram tablets that another nurse had given him several days before. Neither Helgerson nor Springs can be held liable under the

Eighth Amendment for responding to what they honestly believed to be plaintiff's abuse of medication. Gruenberg v. Gempeler, 697 F.3d 573, 579 (7th Cir. 2012) ("inadvertence or error in good faith" does not violate Eighth Amendment).

Plaintiff states in his affidavit (but not in his proposed findings of fact) that he tried to explain the problem to Helgerson but Helgerson would not listen. However, even assuming this is true, the record does not support plaintiff's contention that Helgerson acted with a bad intent. Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015) ("[W]ithout evidence that defendants acted with the requisite bad intent in delaying the dispensation of his medication, Burton's allegations are insufficient to sustain a deliberate indifference claim."). Plaintiff admits that Helgerson honestly believed–albeit incorrectly–that plaintiff was taking too much ibuprofen. Further, even though plaintiff alleges that he was unable to sleep because Helgerson's action left him without ibuprofen from 8:30 p.m. on May 28, 2011 to 6:00 a.m. the next morning, plaintiff has not pointed to any evidence showing that Helgerson knew that his pain was so severe that denying him ibuprofen overnight posed an excessive risk of harm by unnecessarily prolonging plaintiff's pain or exacerbating his injury. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (to support deliberate indifference claim, delay in treatment must exacerbate injury or unnecessarily prolong pain). See also Thomas v. Clay, 411 Fed. Appx. 908, 910 (7th Cir. 2011) (finding same in case in which plaintiff alleged defendant denied him pain medication or a doctor's appointment for 13 days). In this case, Helgerson did not take away plaintiff's ibuprofen altogether. Rather, he placed plaintiff's ibuprofen on controlled status for plaintiff's safety, meaning that plaintiff

would no longer have the drug in his possession and security staff would dispense it at the appropriate times of day. It is undisputed that beginning on the morning of May 29, 2011, plaintiff was offered 600 milligrams of ibuprofen four times a day as prescribed. Accordingly, defendants Helgerson and Springs are entitled to summary judgment as to plaintiff's claims that they denied him pain medication between May 25 and 28, 2011.

## 2. Defendant Suliene: May 31, 2011

Plaintiff generally alleges that defendant Dr. Suliene denied him pain medication after examining him on May 31, 2011, but he does not include any specific information in his proposed findings of fact or affidavit regarding this particular visit. The undisputed facts show that Suliene renewed plaintiff's ibuprofen prescription and prescribed gabapentin for additional pain management the very next day, on June 1, 2011. Following this visit, Suliene also requested approval from the institution's medical committee for a magnetic resonance imaging study and ordered physical therapy for plaintiff.

As with most of his claims against the physician defendants, plaintiff's primary complaint seems to be that Dr. Suliene should have given him more effective medication to address his pain. However, Suliene avers that she considered plaintiff's complaint that 600 miiligrams of ibuprofen was not helping his pain and prescribed him a new medication, gabapentin, reasoning that it would enhance the effect of the ibuprofen and help reduce his pain. In fact, plaintiff agrees that gabapentin did offer him some relief as he continued to take it over the next few years.

Although plaintiff may not agree with Dr. Suliene's treatment decision and may have hoped for even stronger medications, plaintiff's lay opinion is not enough to prove his claim that Suliene acted with deliberate indifference to his pain. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010). Accordingly, defendant Suliene is entitled to summary judgment with respect to this claim.

3. Defendant Hoffmann: June 24, 2011

Plaintiff's allegation that defendant Hoffmann acted with deliberate indifference by discontinuing his muscle relaxer on June 24, 2011 fails because the undisputed facts show that Hoffmann did not start working at the prison until 2014, so he could not have had any personal involvement in the decision to discontinue the medication. Accordingly, defendant Hoffman is entitled to summary judgement with respect to plaintiff's claim that Hoffman discontinued a muscle relaxer on June 24, 2011.

Although plaintiff seems to concede that Hoffman did not make the decision to discontinue his muscle relaxer, he argues that whoever made it was deliberately indifferent to his serious medical need for pain medication. However, even if I were to assume that one of the named defendants was personally involved in the decision to discontinue the muscle relaxer, the undisputed facts show that the medication was discontinued pursuant to a health services unit policy that limits an inmate's use of such medications to three weeks. Although plaintiff suggests that he was left without any other medication or treatment, the record does not support his contention. Two days before, on June 22, plaintiff had seen an outside

medical provider who increased plaintiff's gabapentin dosage. Additionally, after plaintiff submitted a health service request for emergency medical services on June 24, 2011, defendant Helgerson scheduled a sick call. Although the record is silent on what happened at that appointment, plaintiff has not alleged that the treatment he received on June 22 or 24 was inadequate.

### 4. Defendant Springs: November 30, 2016

Plaintiff alleges that defendant Dr. Springs refused to prescribe him pain medication on November 30, 2016. It is undisputed that Springs's only in-person encounter with plaintiff during the relevant time period (May 2011 to March 2017) was on September 22, 2016. At that appointment, she submitted a request for plaintiff to get another steroid injection for temporary relief for his shoulder pain. In Springs's medical opinion, conservative treatment is typically recommended for the injuries that plaintiff claimed on September 22. She also explained that although plaintiff told her that gabapentin had helped his pain, the Bureau of Health Services had recently begun requiring prison physicians to document the failure of a tricycle antidepressant before prescribing gabapentin. According to Springs, she chose to prescribe duloxetine, which can help relieve nerve pain, because plaintiff had told her that nortriptyline had not been helpful. Springs also referred plaintiff for more physical therapy sessions. Apart from his own lay opinion that he should have been treated with gabapentin or narcotics, plaintiff has not adduced any evidence to support his claim that Dr. Springs acted with deliberate indifference to his pain. Accordingly, defendant

Springs is entitled to summary judgment with respect to this claim.

5.  Defendants Hoffman and Syed:  2015

Plaintiff generally alleges that Drs. Hoffman and Syed denied him effective pain medication in 2015.  (Plaintiff's additional allegations about being denied surgery during this time period are addressed below.)  The undisputed facts show that Hoffman did not treat plaintiff in 2015.  Although plaintiff saw Dr. Hoffman several times in 2014, plaintiff did not allege in his complaint that he received inadequate pain medication during those visits.

Dr. Syed saw plaintiff on April 3, 2015, about two weeks after plaintiff had seen a specialist who had recommended steroid injections and physical therapy.  At that time, plaintiff already had been prescribed gabapentin and ibuprofen, and Syed continued those prescriptions because the orthopedic surgeon had not recommended any different medications.  Plaintiff argues that the surgeon recommended Tramadol and Alleve, but the records plaintiff cites in support of that contention show that the surgeon made that recommendation on April 20, 2015, after plaintiff had seen Syed and after plaintiff had received a steroid injection.  Although plaintiff says that he never received Tramadol (a narcotic pain medication) or Alleve, he has failed to present any evidence showing that Syed had any personal involvement in the alleged denial of that medication.  In fact, the only evidence in the record shows that Syed saw plaintiff again on July 6, 2015, and prescribed plaintiff Tramadol for two weeks and then gabapentin for six months.  Without more, a reasonable jury could not conclude that Dr. Syed acted with deliberate indifference to

plaintiff's pain by failing to prescribe him pain medication.

Accordingly, defendants Hoffman and Syed are entitled to summary judgment with respect to plaintiff's claims that they denied him effective pain medication in 2015.

## D.  Denial of Physician Appointments

Plaintiff alleges that the nurse defendants Helgerson, Anderson and Gohde all prevented him from seeing a doctor in a timely manner.  Specifically, he claims that (1) Helgerson intercepted a June 7, 2011 health services request that plaintiff sent to Dr. Suliene and refused to refer plaintiff to the doctor;  (2) Anderson has refused to schedule appointments for plaintiff to see a doctor about his pain since 2015; and (3) in March 2017, Ghode refused to refer plaintiff to a doctor for his pain.  Apart from his general allegations that these defendants did not let him see a doctor right away, plaintiff has failed to present any evidence in support of these claims.

The undisputed facts show that on June 8, 2011, Helgerson responded to two different requests that plaintiff submitted on June 7, 2011.  Although Helgerson reminded plaintiff that he had been seen numerous times by doctors and nurses since May 23, 2011, he still scheduled plaintiff to see a nurse the next day and forwarded the request to the doctor for review.  Dr. Suliene responded to plaintiff the same day, informing him that he should continue taking gabapentin and wait for his upcoming magnetic resonance imaging study. Plaintiff saw Dr. Kenneth Adler in person on June 22, 2011.

Similarly, Anderson responded to health service requests that plaintiff submitted on

24

April 30, 2015, June 10, 2015 and January 13 and February 16, 2016 either by scheduling plaintiff for an appointment with a doctor or noting that he already had an upcoming doctor appointment scheduled. Although plaintiff had to wait between a week to a month to see a doctor on these occasions, plaintiff has not presented any evidence showing that Anderson ignored an urgent or emergency need, apart from his unsupported general allegation that his pain required emergency care.

Gohde responded to plaintiff's March 29, 2017 health service request the same day that she received it, March 31, 2017. She scheduled plaintiff to see nursing staff during sick call that day and noted that plaintiff had a doctor's appointment scheduled for the week of April 10, 2017. Although plaintiff says that he did not have a doctor appointment the week of April 10, he does not present any evidence showing that Gohde knew that he did not have an appointment when she responded to his health service request.

I understand that plaintiff was frustrated that he was not seen immediately by a physician or taken to the hospital for emergency care. However, absent any evidence other than his own opinion that he required emergency care or a hospital visit, a reasonable jury could not conclude that the nursing defendants acted with deliberate indifference in assessing plaintiff's requests for help. The undisputed facts show that Helgerson, Anderson and Gohde reviewed plaintiff's requests quickly and scheduled him for at least a nursing staff visit the same or next day. Nursing staff regularly submitted plaintiff's requests for physician review or contacted the on-call physician for guidance. Plaintiff also received regular physician appointments and referrals to specialists. Accordingly, defendants Helgerson, Anderson and

Gohde are entitled to summary judgment with respect to plaintiff's claims that they acted with deliberate indifference by preventing him from seeing a doctor.

E. Denial of Surgery

Plaintiff alleges that at various times between 2011 and 2016, all of the physician defendants refused to offer him "laser spine surgery" or refer him for such surgery, which, he says, is the only remedy for his herniated discs. Plaintiff contends that his magnetic resonance imaging scans show that he has a serious medical problem and that doctors and lay persons should understand that he needs surgery to treat it effectively.

As an initial matter, it is undisputed that none of the physician defendants are surgeons and they do not have the authority to order surgery in the absence of a recommendation from a surgeon indicating that surgery is necessary. Although plaintiff says that the first orthopedic surgeon he saw at the University of Wisconsin Hospital and Clinics (presumably in November 2011) told him to "wait" for less invasive "laser spine surgery," there is no evidence that any surgeon ever informed the physicians at Columbia Correctional Institution that plaintiff should receive laser spine surgery. Even assuming that a surgeon told plaintiff verbally that he should receive laser spine surgery in the future, a reasonable jury would not conclude that defendants Syed, Suliene, Hoffman and Springs should have approved or referred plaintiff for surgery on the sole basis of a verbal statement made to plaintiff. There is no written record recommending that plaintiff receive any type of surgery. In addition, it is undisputed that plaintiff subsequently saw other orthopedic surgeons for

evaluations on March 9, 2012 and March 16, 2015, and neither of them recommended surgery. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claims that they acted with deliberate indifference in refusing to recommend surgery for him.


ORDER

IT IS ORDERED that the motion for summary judgment filed by Defendants Steve Helgerson, Dalia Suliene, Dr. Springs, Karl Hoffmann, Salam Syed, Trish Anderson and J. Ghode, dkt. #30, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 14th day of March, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge